## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RANDALL A. MASSEY,           )
                                      )

          Plaintiff,          )
                                      )     2:09cv1659

MICHAEL J. ASTRUE,          )     **Electronically Filed**

COMMISSIONER OF SOCIAL SECURITY,   )
                                      )

          Defendant.      )
                                      )

## MEMORANDUM OPINION

December 3, 2010

## I.    INTRODUCTION

Plaintiff, Randall A. Massey ("Massey"), brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1382f. Before this Court are cross-motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The record has been developed at the administrative level. For the foregoing reasons, the Commissioner's Motion for Summary Judgment (Doc. No. 13) will be **DENIED** and Massey's Motion for Summary Judgment (Doc. No. 11) will be **GRANTED**. The case will be remanded to the Commissioner solely to calculate the amount of benefits owed to Massey under Titles II and XVI.

## II       PROCEDURAL HISTORY

Massey protectively filed for DIB and SSI on September 10, 2007, alleging disability as of April 29, 2002[1].  (Record of *Massey v. Astrue*, 91-92, 96)(herein after "R.").  Massey alleged disability due to lower back pain.  *Id.*  The applications were administratively denied on June 30, 2008.  R. 59.  Massey responded by filing a timely request for an administrative hearing.  R. 32-33.  On January 23, 2009, a hearing was held before Administrative Law Judge James Pileggi (the "ALJ").  R. 34-58.  Massey, who was represented by counsel, appeared and testified.  R. 38-55.  Karen Krull, an impartial vocational expert ("VE") also testified.  R. 55-58.

In a decision dated July 2, 2009, the ALJ determined that Massey was not "disabled" within the meaning of the Act.  R. 12-20.  The Appeals Council denied Massey's request for review on October 30, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case.  R. 5-7.  Massey commenced the present action on December 17, 2009, seeking judicial review of the Commissioner's decision.  Doc. No. 1.  Massey and the Commissioner filed motions for summary judgment on July 14, 2010, and August 12, 2010, respectively.  Doc. Nos. 11 & 13.  The motions are now before the Court.


## III.      STATEMENT OF THE CASE

Massey sought treatment from pain medicine specialist Edward Heres, M.D., from July 2006 to April 2007 in an attempt to help with back pain he had experienced since an April 2002

---

[1] Massey had a previous application for DIB which he had filed on June 24, 2002.  R. 37.  In a decision dated June 14, 2006, Massey's application was denied.  *Id.*  Massey appealed unsuccessfully to the Appeals Council and his denial was later affirmed by the Federal District Court for the Western District of Pennsylvania.  *Id.*  In light of this final decision denying Massey benefits dated June 13, 2006, at his hearing before ALJ Pileggi, Massey agreed to amend his alleged onset date in this case to June 14, 2006.  *Id.*

fall while lifting a tree on the job[2]. R. 207-21. Prior to beginning treatment with Dr. Heres, Massey was taking Neurontin, Amitriptyline, and Fentanyl patches. R. 143, 206, 220-21, 244. Massey's pain level in July 2006 was described as "9/10" and was noted to disrupt his sleep. R. 220. Dr. Heres' exam revealed that Massey did not have any neurological deficits and was able to walk with a normal gait and independent ambulation. R. 209-10, 212, 215-16, 218, 221. A magnetic resonance imagining ("MRI") revealed "degenerative disk disease of [Massey's] lumbar spine." *Id.* Dr. Heres continued Massey's prescriptions and added Lyrica to his medications. R. 220-21.

In October 2006, Massey reported that he had stopped his medicine regime because his insurance company had stopped covering his prescriptions for Lyrica, Oxycodone, and Fentanyl patches. R. 216. Massey complained that his pain had worsened. R. 216. As a result, Dr. Heres prescribed Kadian and continued previous prescriptions for Neurontin and Ultam. R. 217. Review of Massey's MRI revealed some mild disk bulging at L3-L4, disk bulge at L4-L5, a generalized disk bulge at L5-S1, and small broad-based right paracentral disk protrusion about the thecal sac. R. 216. Dr. Heres also noted some facet degenerative changes. *Id.*

Throughout his treatment records, Dr. Heres noted Massey's prior unsuccessful treatment history including a discogram, ablations, facet injections, physical therapy, and nerve blocks. R. 208, 210, 218. Despite Massey's extensive treatment, Dr. Heres also noted that he had been in persistent pain without improvement. R. 218.

---

[2] Massey does not challenge the ALJ's finding that his depression is a non-severe impairment or the ALJ's findings that he can perform simple, repetitive work with routine processes and settings with no more than incidental interaction with the public. Doc. No. 12. Therefore, this statement of the case and the remainder of the memorandum opinion will focus on Massey's physical impairments.

On January 12, 2007, Dr. Heres noted that Massey had difficulty getting seated properly for pain relief and continued to rate his pain as a "9/10." R. 214. Dr. Heres recommended that Massey undergo a discogram in order to obtain additional information. *Id.* However, the rest of his follow-up evaluations note that Massey's insurance company refused to pay for the procedure. R. 210, 212, 218. At the final follow-up treatment of record, Dr. Heres noted Massey had some weakness in his lower extremities bilaterally. R. 208. Massey did not exhibit any overt pain behaviors. R. 208, 210, 218.

In September 2006, Dr. Heres referred Massey to orthopedist Jory Richman, M.D., for back pain management. R. 202-206. Dr. Richman evaluated Massey five times from September 2006 until March 2007. *Id.* At his initial evaluation, Dr. Richman noted that Massey had four years of "intractable back pain which radiates into both lower extremities, predominately in a S1 distribution." R. 206. Dr. Richman found that straight leg raising reproduced back pain and that Massey's right side was more affected than his left. *Id.* Massey did not have any neurological deficits and had a full range of motion of both hips without pain. *Id.* Massey appeared "quite anxious" to undergo a surgical fusion, but Dr. Richman advised him that surgery only afforded a fifty percent chance of improvement of his symptoms and carried "considerable risk." *Id.* Dr. Richman recommended a repeat MRI of Massey's lumbar spine in order to re-evaluate his lumbar disks. *Id.*

Massey's subsequent MRI revealed disc degeneration. R. 231-32. The radiologist diagnosed degenerative lumbar changes; a small broad-based right paracentral disc protrusion at the L5-S1 level which did not cause a significant mass effect; degenerative changes causing foraminal narrowing lower lumbar spine, most prominently on the left at L5-S1; and small renal cysts. R. 233.

Shortly thereafter in November 2006, Massey returned to see Dr. Richman. R. 205. Dr. Richman noted that Massey continued to complain of intractable back pain with episodic numbness and burning in his legs. *Id.* No neurologic deficits were noted and Massey's straight leg raising was negative. *Id.* Dr. Richman recommended an electromyogram ("EMG") and nerve conduction velocity ("NCV") since he was "unsure whether [Massey] had any true neurologic dysfunction." *Id.* Dr. Richman posited that if Massey's EMG and NCV showed neurologic abnormalities that he may have better odds with surgical intervention. *Id.*

In January 2007, a review of Massey's EMG and NCV revealed "some mild paraspinal denervation, which show[ed] no evidence of frank radiculopathy." R. 204. Massey had discogenic pathology at L4-5 and L5, S1, which Dr. Richman believed was "most likely causing his pain." *Id.* Dr. Richman recommended a repeat discography. *Id.* However, a repeat discography was denied by Massey's workmen's compensation insurance carrier. R. 203. Dr. Richman suspected that Massey's lower back pain was discogenic in origin, but without the discography's results, he was unable to make any further treatment recommendations. *Id.* Dr. Richman concluded that Massey "was able to do only sedentary work at the present time due to his chronic pain." *Id.*

By March 2007, Massey's discography had still not been approved. R. 202. Dr. Richman noted Massey's continued pain without improvement and stated that he would attempt to contact Massey's workmen's compensation insurance carrier to outline to them that a discogram was necessary. *Id.* Vicodin was prescribed as a "stop gap measure" until a different pain management specialist could evaluate Massey. *Id.*

Dr. Garrett Dixon examined Massey on May 2, 2007. R. 223-25. Dr. Dixon found Massey to be a well-developed male experiencing "persistent intractable pain with evidence of

mild L5 radiculopathies." R. 225. Dr. Dixon noted that Massey's MRI and EMG results supported this diagnosis. *Id.* During his physical examination, Dr. Dixon observed that Massey shifted positions frequently during his examination and demonstrated "many pain behaviors." R. 224. Massey had bilateral tenderness in the lumbar paraspinals. *Id.* He also had a slow and antalgic gait, stooped posture, flexed at the waist, and was sparing his right leg. *Id.* Dr. Dixon found that Massey's pain was "exacerbated by sitting (40 minutes), standing and walking ("maybe a half hour)." R. 223. Massey was found to do marginally better with walking than standing. *Id.* However, ascending stairs was particularly painful. *Id.* Dr. Dixon also noted that bending and lifting were painful. *Id.*

Dr. Dixon concluded that because Massey had persistent intractable pain and management would be difficult because he didn't know if he had "a lot to offer him." R. 225. Accordingly, Dr. Dixon noted that treatment would be limited given what Massey had already undergone. *Id.* Massey expressed that in the past medication management had been "helpful." R. 223. Therefore, Dr. Dixon informed Massey that a new course of lumbar epidurals would be reasonable. *Id.* However, Massey was informed that "it is unlikely that he will find anything that will bring his pain to an acceptable level." *Id.*

Beginning in September 2007, Massey was treated by family practitioner Benjamin Shipton, D.O. R. 252, 308. Massey reported being unable to sit, stand, or walk for any length of time secondary to intense pain, which he rated a "9/10". R. 252. On examination, Dr. Shipton found that Massey had a decreased back range of motion because he only presented with twenty degrees of forward flexion and zero to ten degrees of extension. *Id.* Massey's rotation was ten degrees bilaterally, and was painful. *Id.* Massey also had painful side bending. *Id.* There was

also pain diffusely to palpitation over the entire back. *Id.* Dr. Shipton assessed lumbar disc disease and completed Massey's disability forms. *Id.*

In November 2007, Dr. Shipton found Massey to be in excruciating pain with any physical activity. R. 251. Massey was noted to be unable to carry out his activities of daily living in any significant capacity. *Id.* Dr. Shipton noted Massey's difficulty with flexion and extension of the lumbar spine and that he walked with a limp. *Id.* Massey's extremity examination showed decreased deep tendon reflexes in the lower extremities and there was tenderness to palpation diffusely over the lumbar spine. *Id.* Dr. Shipton assessed Massey with chronic pain syndrome with lumbar disc disease and referred him to pain management. *Id.*

Massey was evaluated by Dr. Shipton again in January 2008. R. 249. Massey presented with a complaint of severe lumbar back pain which prevented him from sleeping at night. *Id.* Dr. Shipton found Massey to be in obvious distress. *Id.* Massey had decreased cervical flexion and his straight leg raising was positive bilaterally. *Id.* Massey's strength testing was slightly weak at the hamstrings, but otherwise unremarkable. *Id.* Massey moved about the exam room with "significant difficulty" and his gait presented with significant antalgia. *Id.* Dr. Shipton assessed acute severe lumbar strain/sprain and lumbar disc disease. *Id.* He renewed all of Massey's pain medications for six months and referred Massey to pain management. *Id.*

Pursuant to Dr. Shipton's referral, Massey was treated by pain management specialist Evelyn Oteng-Bediako, M.D., whom he saw from February to November 2008. R. 270-278. At the first evaluation, Massey rated his pain as an "8/10." R. 277. Massey complained that his pain was aggravated by increased activity, especially walking and sitting, and that it improved with medication. R. 276. Massey's neurological evaluation was positive for numbness and tingling sensations bilaterally over his lower extremities as well as frequent headaches. R. 277.

Dr. Oteng-Bediako found that Massey had difficulty with flexion and extension, which was worse on extension. *Id.* His straight leg raising test was positive bilaterally at seventy degrees. *Id.* Massey was "exquisitely tender to palpation of the lumbosacral region and bilateral SI joint." *Id.* His motor power was also found to be diminished bilaterally. *Id.* Dr. Oteng-Bediako diagnosed Massey with degenerative disk disease, L4-L5 and L5-S1; lumbar myofascial pain syndrome; lumbar strain and sprain; lumbar radiculopathy; and lumbar facet syndrome. R. 278. Massey was scheduled for left facet injections at the L3-4, L405, and L5-S1 levels. *Id.*

After missing three appointments, Massey returned to see Dr. Oteng-Bediako in April 2008. R. 274-75. Massey was in "mild distress." R. 274. He reported that his pain level was a "10/10" and requested injections as soon as possible. *Id.* Upon examination, Dr. Oteng-Bediako found Massey to have reduced range of motion of his lumbar spine in all three planes. *Id.* Massey was also exquisitely tender on palpation of the lumbosacral region above the bilateral facet joints, which was worse on the left side. *Id.* Extension aggravated Massey's pain. *Id.* Massey was prescribed Vicodin and an appointment was scheduled for injections. R. 275.

Massey underwent three rounds of lumbar facet blocks on the left L3-S1 facet joints in May 2008, June 2008, and December 2008. R. 270-73, 324-29. Massey reported one hundred percent relief for the twenty four hours after the first injection. R. 270.

In June 2008, state agency physician Mary Ellen Wyszomierski, M.D., reviewed Massey's file and concluded that he could perform a range of sedentary work. R. 279. Dr. Wyszomierski found that Massey had degenerative disc disease, lumbar radiculopathy, and lumbar myofascial pain. *Id.* Dr. Wyszomierski opined that Massey could occasionally lift and/or carry ten pounds; frequently lift/carry less than ten pounds; stand and/or walk up to two hours; and sit (with normal breaks) for about six hours. R. 280. Massey was not assessed any

limitations in pushing or pulling. *Id.* Dr. Wyszomierski concluded that Massey could occasionally perform postural limitations including using ramps or climbing stairs, but should never climb ladders, ropes or scaffolds. R. 280. Massey would also need to avoid concentrated exposure to extreme cold, wetness, and vibration and even moderate exposure to hazards such as machinery and heights due to his medications. R. 282.

In July 2008, Massey was evaluated by Dr. Oteng-Bediako's colleague, Victor Georgescu, M.D. R. 312-16. Massey's extension of the thoracolumbar segment was positive for pain in the paravertebral muscles. *Id.* Examination of Massey's lower extremity showed Lasegue's sign and was suggestive of sciatica bilaterally. *Id.* Massey was diagnosed with lumbar radiculopathy, facet syndrome, lumbar, and myofascial pain of the lumbosacral segment. *Id.* Dr. Georgescu reported that Vicodin three times daily and Lidoderm patches that provided "satisfactory relief" and had allowed Massey to perform his daily activities of living. R. 315-16. Massey was willing to begin an aqua therapy program which had been previously been helpful. R. 316.

In November 2008, Massey presented to Dr. Oteng-Bediako for a follow-up examination. R. 312. Massey stated that the previous injections had been helpful, but that the pain had shifted to his right side. *Id.* He described the pain as a continuous aching and as a "7/10". *Id.* Massey requested injections for his right side pain. *Id.* Dr. Oteng-Bediako found that Massey had tenderness to palpation over right lumbar paraspinal muscles and that extension aggravated his pain. *Id.* He also presented with increased lumbar paraspinal muscles which was worse on the right side. *Id.* Dr. Oteng-Bediako again explained diagnostic and medial branch blocks and Massey expressed his interest in proceeding with blocks on his right side. *Id.*

Finally, in December 2008, Dr. Shipton completed a "Physical Capacity Evaluation." R. 300-303. Dr. Shipton noted that Massey had a decreased range of motion, severe and unremitting pain of a severity of nine or ten out of ten which precluded meaningful employment. R. 302. Massey's impairments were also noted to interfere with almost all activities of daily living. *Id.* Dr. Shipton further noted that Massey had symptoms despite his extensive treatment history and his high doses of medication. *Id.*

Specifically, Dr. Shipton opined that Massey could stand/walk for two hours out of an eight hour workday, sit up to four hours, occasionally squat, and occasionally lift up to ten pounds. R. 300. Massey was also assessed to be unable to use his feet for repetitive foot controls or bend, crawl, or climb. R. 301. Dr. Shipton opined that Massey would likely miss ten to fifteen days a month due to his diagnoses of lumbar disc disease and chronic lumbar sprain and he would be unable to function without rest breaks in excess of those usually provided. *Id.* Dr. Shipton concluded that Massey would be unable to perform meaningful work of any kind and that he has been totally disabled since April 29, 2002. R. 301-02.

At the hearing, Massey testified that he had constant pain in his lower back which radiates through his buttocks, through the back of both legs to both feet. R. 42. He testified that the pain was constant but varied in intensity to the point "where it is unbearable" approximately three to four days a week. R. 42, 54. Massey testified that his pain medications take the edge off his pain, but never take the pain away. R. 43. He relayed that his pain prevents him from sleeping more than two hours a night. R. 47. According to Massey, he can walk about one hundred yards before the pain prevents him from continuing. R. 43. He testified that he can stand for no more than twenty minutes and sit sideways for approximately thirty minutes. R. 43-44. Massey also testified that he could lift ten pounds and was capable of squatting. R. 44-45.

As to his activities of daily living, Massey testified that he was able to "for the most part" to care

for his personal needs such as washing and dressing, but was prevented from going grocery

shopping.  R. 51-52.  Massey testified that he spends more than half of his days in a recliner and

up to eleven hours a day in bed.  R. 52-53.


## IV.     STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is

"supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d

Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or

re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-

1191 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)(internal

quotation marks omitted).  As long as the Commissioner's decision is supported by substantial

evidence, it cannot be set aside even if this Court "would have decided the factual inquiry

differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial

evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d

Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically

determinable basis for an impairment that prevents him [or her] from engaging in any

'substantial gainful activity' for a statutory twelve-month period."  *Stunkard v. Secretary of*

*Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the

list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## V. THE ALJ'S DECISION

In his decision, the ALJ determined that Massey had not been under a disability within the meaning of the Act from June 14, 2006, the amended alleged disability onset date, through

13

the date of his decision.  R. 20.  Massey was found to have met the insured status requirements through June 30, 2007.  R. 14.

At step one, the ALJ found that Massey had not engaged in substantial gainful activity since June 14, 2006.  R. 14.  At step two, the ALJ found that Massey had the severe impairment of degenerative disc disease[3].  *Id.*   At step three, the ALJ determined that Massey's severe impairment of degenerative disc disease did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 404.920(d), 416.926, 416.929).  R. 15.

Massey's residual functional capacity ("RFC") was assessed as follows:

" After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)[4] except [he] must not have sit/stand option; no foot controls; no climbing, kneeling, crawling, or balancing; no repeated bending at the waist to ninety degrees; limited to simple repetitive work with routine processes and settings, and no more than incidental interaction with the public."  R. 16.

Based on his determination of Massey's RFC, at step four, the ALJ determined that Massey was not capable of performing any of his past relevant work as a hair stylist, cosmetology instructor, clerk, security guard, or store manager.  R. 18.

Massey was born on September 3, 1964, making him forty-one years old as of the alleged disability onset date.  R. 19.  He was classified as a "younger individual" under the

---

[3] The ALJ determined that Massey's depression did not cause more than a minimal limitation in his ability to perform basic mental work activities and therefore was not included in his list of severe impairments.  *Id.*

[4]  (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

Commissioner's regulation. *Id.* Massey has at least a high school education and the ability to speak English. *Id.*; 20 C.F.R. § 416.964(b)(4)-(5). Transferability of job skills was not material to the ALJ's determination of disability. R. 19. At step five, the ALJ considered Massey's age, education, work experience, and RFC and determined that he would be able to perform the representative occupations of alarm monitor, surveillance system monitor, hand packer, and ticket sorter. *Id.* The VE's testimony established that these jobs existed in the national economy for the purposes of 42 U.S.C. § 1382c(a)(3)(B). R. 55-58. Therefore, the ALJ concluded that Massey had not been under a disability during the relevant time period. R. 20.

## V.     DISCUSSION

### A.     The ALJ Erred by Rejecting Numerous Uncontradicted Limitations Assessed by Massey's Treating Physicians

Massey initially contends that the ALJ erred as a matter of law in rejecting the opinion of Dr. Shipton that he had numerous functional limitations and would be unable to complete an eight hour workday. Doc. No. 12, 14. Massey alleges that despite alleging Dr. Shipton's opinion was "inconsistent", the ALJ did not indicate any inconsistency or contradictory evidence. *Id.* Indeed, Massey argues that Dr. Shipton's opinion was not contradicted by any treating or examining source or the consultative examiner. *Id.* The Commissioner contends that the ALJ properly weighed the medical opinion evidence and that his decision is supported by substantial evidence. Doc. No. 14, 11-17.

The claimant bears the ultimate burden of proving disability in Social Security disability cases. 42 U.S.C. §§ 423(d)(5)(A)(providing that "[a]n individual shall not be considered under a disability unless he furnishes such medical and other evidence of the existence thereof as the

Commissioner may require."); 20 C.F.R. §§ 404.1512(a), 416.912(a). As the fact finder, the ALJ

evaluates the record and weighs the relative worth of the evidence as a necessary part of

determining disability. 20 C.F.R. §§ 404.1520(a)(3), 404.1527(c), 416.920(a)(3), 416.927(c).

Treating physicians' opinions are not automatically controlling, but are entitled to

significant weight[5]. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ retains the duty to

analyze treating source opinions and judge whether they are well-supported by the medical

evidence and consistent with other substantial evidence in the record. 20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2). An ALJ "may afford a treating physician's opinion more or less

weight depending upon the extent to which supporting explanations are provided." *Plummer*,

186 F.3d at 429. Indeed, the more supported and consistent an opinion is with the record as a

whole, the more weight will be given to the opinion. 20 C.F.R. §§ 404.1527(d)(3),(4), 416.927

(d)(3),(4), *See* Social Security Ruling ("SSR") 96-2 ("A statement by a physician or other

treating source can be given weight only to the extent it is supported by medical findings.").

Nevertheless, a cardinal principle guiding disability eligibility determinations is that the

ALJ accord treating physicians' reports great weight." *Plummer*, 186 F.3d at 429, *quoting Rocco*

*v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987) (additional citations omitted). The ALJ must

weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence

for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000),

*quoting Plummer*, 186 F.3d at 429. The ALJ can only reject a treating physician's opinion on the

---

[5] This principle is especially true when the treating physician's opinion reflects "expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales*, 225 F.3d at 317, *citing Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999).

basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-18.

In the present case, the ALJ improperly rejected well-supported and consistent medical opinions of record documenting Massey's non-exertional limitations. The "extreme" limitations Dr. Shipton imposed in his Physical Capacity Evaluation are well-supported by his treatment notes. Dr. Shipton consistently noted significant limitations resulting from Massey's physical impairments including that Massey: appeared at times to be in obvious distress; moved about the exam room with significant difficult; could not carry about his activities of daily living in any significant capacity; walked with a limp; had tenderness to palpitation over his lumbar spine; had decreased deep tendon reflexes in his lower extremities; and decreased back and side bending range of motion. R. 249, 251-52. Furthermore, consistent with the limitations he assessed in his Physical Capacity Evaluation, Dr. Shipton noted on November 20, 2007, that Massey had "trouble carrying even objects as little as ten pounds." R. 251. Massey also had noted difficulty with flexion and extension of his lumbar spine. *Id.* Moreover, Dr. Shipton also referred Massey to pain management providers and continually renewed his numerous prescriptions. R. 249.

Dr. Richman's treatment records are also well-supported by prior objective medical testing. R. 202-232, 269-278. An MRI of Massey's spine taken in June 2002 showed mild degenerative changes of L4-5 and L5-S1 with the evidence of disk protrusion or neuroforaminal compromise. R. 277. A subsequent MRI in January of 2003 showed findings consistent with annular treat at L4-L5 and minimal bilateral neural foraminal stenosis at L4-L5. *Id.* An April 2003 discogram confirmed L4-L5 concordant pain and an EMG of Massey's lower extremity confirmed chronic L5 radiculopathy. R. 277-78.

Furthermore, Dr. Shipton's assessment is also well-supported by objective medical tests evaluated by Massey's other treating physicians. An MRI performed by Dr. Heres in October 24, 2006, showed that Massey had a loss of T2 signal in his lower lumbar discs, indicative of disc degeneration. R. 231. Dr. Dixon noted that Dr. Heres' 2006 MRI as well as another MRI shortly after Massey's injury in 2002 showed degenerative changes at L4-5 and L5-S1, as well as persistent degenerative change with a small rightward disc protrusion at L5-S1. R. 223. Dr. Dixon's physical examination revealed that Massey demonstrated many pain behaviors and needed to shift positions frequently. R. 224. Massey also presented with tenderness in the lumbar paraspinals, bilaterally. *Id.* Dr. Oteng-Bediako's objective physical examination also found that Massey physical limitations. Among other findings, Massey had difficulty with flexion and extension and he had diminished motor power bilaterally secondary to pain. R. 277.

Indeed, even consultative examiner Dr. Wsyzomierski noted objective medical testing had demonstrated Massey's impairments. Dr. Wsyzomierski highlighted that Massey's record included EMG evidence of abnormalities, "possibly radiculopathy and [his] MRI is consistent with facet disease bilaterally." R. 285. She also noted evidence of Massey's limited range of motion. *Id.* In short, Dr. Shipton's opinion that Massey presented with significant physical limitations is well-supported by objective medical testing.

Dr. Shipton's Physical Capacity Evaluation is also supported by the consistent opinions of Massey's other treating and examining physicians including Drs. Dixon, Heres, and Oteng-Bediako. All of the medical opinion evidence supported Massey's diagnoses of severe back pain and his resulting limitations. Specifically, Dr. Oteng-Bediako noted that Massey had a reduced range of motion and was "exquisitely tender on palpation." R. 274. Dr. Oteng-Bediako also concluded that Massey's "pain is made worse by increased activity, especially walking and

18

sitting . . . ."  R. 276.  Despite numerous procedures, the injections and facet blocks administered by Dr. Oteng-Bediako only provided Massey with relief for twenty-four hours.  R. 270.

Additionally, consistent with both Drs. Shipton and Oteng-Bediako, Dr. Dixon expressed that Massey's treatment options were limited and that "it is unlikely that he will find anything that will bring his pain to an acceptable level."  R. 225.  Massey's pain was described as persistent and intractable.  *Id.*  Dr. Dixon determined that Massey's pain was exacerbated by sitting longer than forty minutes or standing and/or walking more than half an hour.  R. 223.  Dr. Richman also repeatedly documented Massey's intractable severe chronic pain which he believed was discogenic in origin and presented without improvement.  R. 203, 206.  Dr. Richman presented that Massey's pain was "intractable."  R. 206.  Dr. Heres noted that Massey had difficulty getting on and off the table for pain treatments and being seated for pain relief.  R. 214.  Massey's pain was described as "persistent without improvement" despite his having undergoing steroid injections, rhizotomy, physical therapy, and a discogram in the past.  R. 208.

In short, Dr. Shipton's opinion was both well supported by objective medical testing and consistent with substantial evidence of record[6].  Therefore, the limitations assessed in Dr. Shipton's treatment records as well as documented in his Physical Capacity Evaluation should have been afforded significant, if not controlling, weight.  20 C.F.R. §§ 404.1527(d)(3),(4), 416.927 (d)(3),(4).  Nevertheless, although an ALJ is free to choose between conflicting medical

---

[6] Furthermore, Massey's testimony as to his at times "unbearable" pain supports his claim for benefits and the assessments of his treating physicians.  R. 42.  Indeed, there is nothing in the statute, the regulations or case law which requires objective evidence of pain.  *Green v. Schweiker*, 749 F.2d 1066 (3d Cir. 1984).  All that is required is proof of a medical condition that could reasonably be expected to cause pain.  *Williams v. Sullivan*, 970 F.2d 1178 (3d Cir. 1992).  As discussed previously, Massey has demonstrated physical limitations resulting from his fall in 2002.

evidence of record, he "cannot reject evidence for no reason or for the wrong reason." *Morales*, 225 F.3d at 317. Here, the ALJ improperly rejected Dr. Shipton's extensive notations of Massey's limitations derived from his back impairment based solely on the ALJ's lay opinion and speculation that Dr. Shipton's opinion, "which states among other things that the claimant would miss work ten to fifteen times a month, is not consistent with the objective medical evidence or the physician's own treatment notes." R. 18. The ALJ continued, "when asked to identify the clinical findings on which he based the opinion, the physician's response indicated that the opinion was based on reduced range of motion and the claimant's subjective reports of pain." *Id.* These statements were the sole support that the ALJ relied upon to reject the entire body of Dr. Shipton's treatment note and his Physical Capacity Evaluation as well as the consistent opinions of Massey's other treating physicians. *Id.*

An ALJ's determination of disability must not be based on his own credibility judgments, speculation or lay opinion. *Adorno*, 40 F. 3d at 47. Specifically, an ALJ may not make speculative inferences from medical reports and is not free to employ her own lay opinion against that of a physician who presents competent medical evidence. *Fargnoli*, 247 F.3d at 37. Indeed, an ALJ is "not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985). Here, the ALJ summarily rejected Dr. Shipton's assessed limitations which were well-supported by objective medical evidence and consistent with other substantial evidence based on his own lay opinion of Dr. Shipton's clinical findings. R. 18. Furthermore, the ALJ completely ignored the overwhelming amount of medical evidence from Dr. Shipton and other treating physicians documenting Massey's

limitations. *Id.* Therefore, the ALJ's rejection of Dr. Shipton's assessed limitations without citing contrary medical evidence was plainly error. *Adorno*, 40 F.3d at 47.

In 2008, the United States Court of Appeals for the Third Circuit in *Brownawell v. Comm'r*, 554 F.3d 352 (3d Cir. 2008), reiterated the "treating physician rule[7]." The Court reversed the ALJ's denial and awarded the plaintiff benefits, holding that the ALJ's decision was "clearly erroneous" and was not supported by substantial evidence because the ALJ failed to give appropriate weight to the opinions of the claimant's treating physicians, which were confirmed by a consultative examiner. *Brownawell*, 554 F.3d at 355. The ALJ in *Brownawell* relied on opinions of the State Agency physician to deny benefits. *Brownawell,* 554 F.3d at 361. The United States Court of Appeals for the Third Circuit rejected this reliance noting that "this Court has consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who does not examine the claimant when such testimony conflicts with testimony of the claimant's treating physician." *Brownawell,* 554 F.3d at 361(internal quotations omitted) *citing Dorf v. Comm'r*, 794 F.2d 896, 901 (3d Cir. 1986).

An ALJ may reject the opinion of a treating physician when that opinion is contradicted by other probative medical evidence. *Morales*, 225 F.3d at 317; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). Here, unlike the ALJ's in *Brownawell* and *Morales*, the ALJ did not rely on any contradictory medical evidence when rejecting Dr. Shipton's opinion. R. 18. Indeed, although the ALJ stated that he gave "great weight" to the opinion of Dr. Wyszomierski,

---

[7]  The opinion in *Brownawell* is not a precedential opinion under United States Court of Appeals for the Third Circuit operating procedure Rule 5.7 and as such is not binding precedent for this Court. *Brownawell*, 554 F.3d 352. However, it has been cited and followed by other Courts in the Western District of Pennsylvania. *See Knox v. Astrue,* 2010 U.S. Dist. LEXIS 28978 (W.D. Pa. Mar. 26, 2010), *Lehman v. Astrue,* 2010 U.S. Dist. LEXIS 48783 (W.D. Pa. 2010), *Adriondo v. Astrue*, 2010 U.S. Dist. LEXIS 21313 (W.D. Pa. Mar. 9, 2010).

her Physical Capacity Assessment supports a determination that Massey was disabled because it does not contradict Dr. Shipton's assessed limitations. R. 279-285. Notably, both physicians limited Massey to standing/walking for a maximum of two hours a day. They also both limited Massey to sitting with normal breaks for about six hours or less. R. 280, 300. There were also assessed limitations that were not included in Massey's RFC such as that Massey should avoid even moderate exposure to hazards such as heights and operating some machinery due to his heavy medicine regime. R. 282. The ALJ did not cite any contradictory medical evidence in Dr. Wyszomierski's Physical RFC Capacity Assessment to rebut well-supported Dr. Shipton's assessments. R. 18.

In short, medical opinions that Massey's physical impairment resulted in serious functional limitations were corroborated by objective clinical findings and consistent medical opinion. Indeed, Dr. Shipton's and Massey's other treating physician's specific functional limitations were not the plainly vague conclusory statements that Massey is disabled or unable to work of the type that the Commissioner may ignore pursuant to 20 C.F.R. §§ 404.1527(e), 416.927(e). Therefore, Dr. Shipton's opinion and his assessed limitations were warranted significant, if not controlling weight. 20 C.F.R. §§ 404.1527(d)(2). As in *Brownawell*, the ALJ erred in failing to give appropriate weight to the opinions of the claimant's treating physicians which were uncontradicted and confirmed in-part by a consultative examiner. *Brownawell*, 554 F.3d at 352. *See also Morales*, 225 F.3d at 310. Instead, the ALJ improperly and summarily rejected Dr. Shipton's opinion without citing any contrary medical source or opinion. R. 18. This was plainly error as an ALJ may not reject the opinions of treating physicians unless those opinions are contradicted by other medical evidence. *Morales*, 225 F.3d at 317. Therefore, the ALJ's decision is not supported by substantial evidence. *Id.*

**B.** The ALJ's Hypothetical Question to the VE and his Determination of Massey's RFC are not Supported by Substantial Evidence

The ALJ incorporated many of Massey's identified functional limitations including his difficulty climbing, kneeling, crawling, or balancing, and limited him to positions in which he would have the sit/stand option and he would not have to repeatedly bend at the waist to ninety degrees or use foot controls into his hypothetical question posed to the VE and Massey's resulting RFC. R. 16. However, the ALJ rejected Massey's most serious limitations in areas such as his complete inability to bend, as well as his inability to maintain regular attendance or to function in spite of his medical impairments without excessive rest breaks, without citing contrary medical evidence. R. 301.

If an ALJ poses a hypothetical question to a VE that fails to reflect "all of the claimant's impairments that are supported by the record . . . it cannot be considered substantial evidence." *Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Here, the hypothetical question the ALJ posed to the VE did not include many of Dr. Shipton's assessed limitations as noted above. Therefore, it is not supported by substantial evidence. *See Plummer,* 186 F.3d at 431 (providing that a VE's testimony may be relied upon as substantial evidence to support the ALJ's decision, as long as the hypothetical presented to the VE "fairly set[s] forth every credible limitation set forth by the physical evidence.").

Further, the ALJ must consider all the evidence of record in making a RFC determination. *Plummer,* 186 F.3d at 429. A RFC must include all limitations supported by the medical record or it is not supported by substantial evidence. *Fargnoli,* 247 F.3d at 41. An ALJ may weigh the credibility of evidence, but must give an indication of the evidence he rejects and

23

reasons for discounting said evidence. *Plummer*, 186 F.3d at 429. Otherwise, "in the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705.

The ALJ's RFC does not include several of Dr. Shipton's assessed limitations which would affect Massey's ability to perform certain work-related tasks, such as his inability to maintain a normal workday schedule without excessive breaks. R. 16. The ALJ also did not include other serious assessed limitations such as Dr. Dixon's notation that ascending stairs was particularly painful for Massey and Dr. Wyszomierski's opinion that Massey should avoid any exposure to heights and operating some machinery. R. 223. Without mention of these limitations in his decision or inclusion of these limitations in Massey's RFC, this Court can only assume that the ALJ did not consider all of the evidence of record. Therefore, substantial evidence does not support the RFC determination or the ALJ's decision. *Plummer*, 186 F.3d at 429-30.

C.    The Record Clearly Demonstrates that Massey is Statutorily Disabled

In light of the foregoing analysis, the ALJ's decision cannot be affirmed. The only remaining question is whether a judicially-ordered award of benefits is proper, or whether the case should be remanded to the Commissioner for further administrative proceedings. An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled. *Morales*, 225 F.3d at 320. That standard is met here.

Massey has a very extensive treatment history beginning in 2002 documenting his attempt to find relief from his back pain. There is no medical evidence to contradict that Massey suffers from debilitating back pain. Indeed, the record demonstrates that Massey's activities of

daily living have been profoundly affected and that his many attempts at treatment have provided little or temporary results. The record has been fully developed, including a consultative examination by Dr. Wyszomierski, who confirmed that Massey's impairment resulted in serious wide-ranging limitations such as his inability to climb ladders, ropes, or scaffolds. R. 281.

If credited, Dr. Shipton's Physical Capacity Evaluation would exclude all substantial gainful activity because the ability to engage in substantial gainful employment means more than the ability to do certain physical and mental acts required on the job; the claimant must be able to sustain the physical and mental demands of work-related activities throughout continuous attendance in a regular work week. *Dobrowolsky v. Califano*, 606 F.2d 403, 408 (3d Cir. 1979). The many noted limitations of Massey's other treating physicians, such as Dr. Oteng-Bediako's notation that his "pain is made worse by increased activity, especially walking and sitting" and Dr. Dixon's conclusion that Massey is unlikely to find any treatment which would bring his pain to an acceptable level also demonstrate that Massey has very severe limitations which would preclude substantial gainful employment. R. 225, 276. Massey has met his burden in demonstrating his disability under 42 U.S.C. §§ 423(d)(5)(A).

Massey has unsuccessfully appealed his DIB and SSI applications twice to the Appeals Council and has appealed both times to the Federal District Court for the Western District Court for the Western District of Pennsylvania. He has been waiting a great deal of time for a final decision on his applications for benefits. Furthermore, there is no indication that remanding this case would serve judicial economy or result in a final decision which would not come before this Court on appeal.

Therefore, since the record has been fully developed and the record as a whole clearly points in favor of a finding that Massey is statutorily disabled, this case will be remanded to the Commissioner solely for a calculation of the amount of benefits owed to Massey.

## VI.    CONCLUSION

In conclusion, the ALJ's factual findings are not consistent with the medical evidence contained in the record.  Medical opinions from treating physician Dr. Shipton as well as Massey's numerous other treatment providers document significant functional limitations which the ALJ rejected based on his own conclusions and review of the record.  Therefore, the ALJ failed to properly analyze the medical evidence of record and substantial evidence does not exist to support the ALJ's conclusion that Massey was not disabled within the meaning of the Act.  Furthermore, the record is fully developed and clearly points in favor of finding that Massey statutorily disabled because of the overwhelming medical evidence documents significant functional limitations which would prevent him from maintaining substantial gainful activity.

Accordingly, Plaintiff's motion for summary judgment will be granted and the Commissioner's motion for summary judgment will be denied.  The administrative decision of the Commissioner will be reversed and remanded solely for a calculation of benefits owed to Massey under Titles II and XVI of the Act.   An appropriate order follows.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Christy Wiegand
        Assistant United States Attorney
        Karl E. Osterhout, Esquire
        *Via CM/ECF Electronic Mail*